**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BETHANIE PERRY,**

                         **Plaintiff,**                         **3:11-cv-1122**
                                                                **(GLS)**

              **v.**

**MICHAEL ASTRUE,**
Commissioner of Social Security,

                         **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Lachman, Gorton Law Firm                 PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN                SIXTINA FERNANDEZ
United States Attorney                   Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. <u>Introduction</u>

Plaintiff Bethanie Perry challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Perry's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. <u>Background</u>

On September 23, 2009, Perry filed an application for SSI under the Social Security Act ("the Act"), alleging disability since January 5, 2001 (*See* Tr.[1] at 79, 132-34.)  After her application was denied, (*see id.* at 80-85), Perry requested a hearing before an Administrative Law Judge (ALJ), which was held on April 22, 2011.  (*See id.* at 31-67, 86-92.)  On June 17, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review.  (*See id.* at 1-6, 8-30.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 10.)

Perry commenced the present action by filing her Complaint on September 21, 2011 wherein she sought review of the Commissioner's determination.  (*See generally* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (*See* Dkt. Nos. 9, 10.) Each party, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 18, 19.)

## III.  <u>Contentions</u>

Perry contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.[2]  (*See* Dkt. No. 18 at 3-13.)  Specifically, Perry claims that the ALJ erred in failing to find that listings 12.05(B) and/or 12.05(C) were met.  (*See id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence.  (*See* Dkt. No. 19 at 6-13.)

## IV.  <u>Facts</u>

The evidence in this case is undisputed and the court adopts the

---

[2] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citation omitted).

recitation of facts contained throughout the parties' briefs.  (*See* Dkt. No. 18 at 2-13; Dkt. No. 19 at 1-13.)

## V.  <u>Standard of Review</u>

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  <u>Discussion</u>

### A.    <u>Listing 12.05</u>

Perry contends that the ALJ erred in determining that she did not meet Listing 12.05(B) or (C).  (*See* Dkt. No. 18 at 3-13.)  Specifically, Perry argues that the ALJ erred in finding that she did not possess the required deficits in adaptive functioning and by refusing to accept her IQ scores as valid.  (*See id.* at 3-8.)  Further, Perry claims that the ALJ erred in failing to find that her headaches, deviated septum, chest pain, costochondritis, and

---

[3] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical.

left hilar calcified lymph node were significant impairments under Listing

12.05(C).[4]  (*See id.* at 9-13.)  The court disagrees.

At the third step of the disability evaluation, the ALJ is required to

determine whether the claimant's impairment(s) meet or equal an

---

[4] To the extent that Perry's arguments can be construed as a challenge to the ALJ's severity determination at step two of the disability evaluation, the court finds that substantial evidence supports the ALJ's determination.  (*See* Dkt. No. 18 at 9-10.)  Specifically, the ALJ found that "[t]here is no medical evidence to support the existence of any significant limitations in [Perry] due to her nosebleeds, calcified chest lump, . . . headaches, . . . sinusitis, or post-nasal surgery." (Tr. at 14.)  The ALJ cited to evidence that these impairments were well-controlled by treatment including medication.  (*See id.* at 223-28, 232-33, 260-61, 263, 322.)  In addition, Perry did not seek her physician's treatment for her headaches from March 2009 until March 2011, one month prior to the administrative hearing.  (*See id.* at 232, 325.)  Finally, with respect to her chest pain, a CT scan in January 2010 first revealed a left hilar calcified lymph node. (*See id.* at 308.)  Perry did not seek any treatment for this impairment until May 2010 when she had an accident at work and was diagnosed with costochondritis.  (*See id.* at 298.)  A chest x-ray taken at this time was unremarkable.  (*See id.* at 307.)  Significantly, Perry has not sought treatment related to this impairment since August 2010, at which time she reported that "the chest pain that she experienced in the past [was] not bothering her as much now." (*Id.* at 296.)  Lastly, a chest x-ray taken in December 2010 showed "[n]o evidence of active intrathoracic disease." (*Id.* at 304.)  Accordingly, the ALJ permissibly determined that a finding of severe impairment based on Perry's headaches, deviated septum, chest pain, costochondritis, and left hilar calcified lymph node was not supported by the weight of the evidence in the record.  *See* 20 C.F.R. §§ 416.920(c), 416.921(b)(1); SSR 85-28, 1985 WL 56856, at *3 (1985) (explaining that when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities," a finding of "not severe" is warranted).

impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  *See* 20 C.F.R.
§ 416.920(d).  To establish disability under section 12.05,  which pertains
to mental retardation, Perry had to first make a threshold showing that she
possessed "significantly subaverage general intellectual functioning with
deficits in adaptive functioning initially manifested during the developmental
period" prior to age twenty-two.  20 C.F.R. pt. 404, subpt. P, app. 1
§ 12.05; *see id.* § 12.00(A).  "[D]eficits in adaptive functioning 'denotes an
inability to cope with the challenges of ordinary everyday life.'"  *Carrube v.
Astrue*, No. 3:08-CV-0830, 2009 WL 6527504, at *4 (N.D.N.Y. Dec. 2,
2009) (quoting *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007)); *see also
Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012).  This includes
consideration of a "claimant's effectiveness in areas such as social skills,
communication, and daily living skills."  *West v. Comm'r of Soc. Sec.
Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007).  To satisfy listing 12.05(B),
Perry must further demonstrate that she suffers from "[a] valid verbal,
performance, or full scale IQ of [fifty-nine] or less."  20 C.F.R. pt. 404,
subpt. P, app. 1 § 12.05(B).  Alternatively, Perry could qualify under listing
12.05(C) if she had "[a] valid verbal, performance, or full scale IQ of [sixty]
through [seventy] and a physical or other mental impairment imposing an

additional and significant work-related limitation of function." *Id.* § 12.05(C).

Here, the ALJ found that Perry "does not have the deficits in adaptive functioning that are required to support a diagnosis of mental retardation." (Tr. at 17.)  In doing so, the ALJ discounted the adaptive behavior rating given by Perry's special education teacher Shawn Bentley—which placed Perry's adaptive functioning at the below average to extremely low range—because Bentley explicitly noted that answers on various items of the assessment were guesses or estimates and Perry's school psychologist stated that no adaptive deficits for Perry had been reported. (*See id.* at 18, 221-22.)  Notably, the state agency review psychologist opined that Perry's activities of daily living suggested normal daily functioning and, while the evidence of record established that Perry suffers from borderline intellectual functioning, she retains the functional capacity to perform the basic mental demands of unskilled work.  (*See id.* at 287); *see Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").  Indeed, the record shows that Perry's activities of daily living include dressing, bathing

and grooming herself, shopping, general cleaning, taking public transportation, and socializing with friends and family.  (*See id.* at 56, 161-65, 261.)  She also reported babysitting, taking care of pets, watching television, and listening to the radio.  (*See id.* at 161, 261.)

In addition, Perry graduated from high school with an Individualized Education Program (IEP) diploma and successfully completed a work study program in a pre-kindergarten classroom while attending high school.  (*See id.* at 37, 50-51, 55, 182-83.)  Her IEP from January 2007 reflected that she got along well with teachers and peers and was well behaved in class. (*See id.* at 184.)  Perry's school psychologist noted that her verbal thinking skills and social functioning were a relative strength for her.  (*See id.* at 222.)  The record also reflects Perry's work history including her work for almost one year as a part-time aide at the YWCA and ninety-two days at McDonald's before she was let go, due to a time and attendance problem unrelated to her mental impairments.  (*See id.* at 48-50, 62, 136, 144, 159, 169-70.)

Ultimately, substantial evidence supports the ALJ's determination that Perry did not possess the required deficits in adaptive functioning and was, therefore, not disabled under Listing 12.05.  (*See id.* at 17-18.)

## B.    Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of

the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and

Perry's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 6, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court